**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ILLINOIS INVESTMENT TRUST<br>NO. 92-7163,** | )<br>)<br>) | |
| **Appellant,** | )<br>) | |
| vs. | )<br>) | Case No. 07 C 3268 |
| **AMERICAN GRADING COMPANY,** | )<br>)<br>) | |
| **Appellee.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

After a trial, Chief Bankruptcy Judge Eugene Wedoff denied a motion filed by Jay A. Steinberg, bankruptcy trustee of Resource Technology Corporation ("RTC"), to assume an agreement between RTC and American Grading Company and assign the agreement to Illinois Investment Trust ("IIT"). IIT has appealed from Judge Wedoff's order. For the reasons stated below, the Court affirms the bankruptcy court's decision.

**Background**

Before it was put into involuntary bankruptcy, RTC was in the business of collecting methane gas emitted from garbage landfills and converting it into usable energy. On December 27, 1995, RTC and American Grading entered into an agreement ("the Agreement") pursuant to which RTC installed and operated a gas collection and conversion facility on a landfill owned by American Grading in Lyons, Illinois (the "McCook landfill"). The Agreement had an initial term of ten years, to expire on December 27, 2005. The Agreement provided that RTC could extend its term for up to three consecutive periods of five years by providing written notice of its

intent to renew at least ninety days before the expiration of the preceding period.

In return, RTC agreed to pay American Grading royalties from the sale of electrical energy. RTC was required to pay American Grading a $100,000 advance royalty payment on January 1, 1996 "and each January 1 thereafter during the life of the contract." Agreement ¶2. The Agreement also imposed other obligations on RTC. Finally, the Agreement contained a termination clause that stated:

> TERMINATION. If either party or its assigns defaults of persistently fails or neglects to perform any duty or obligation under this Lease, the other party may terminate the Lease by giving written notice of its intention to terminate. If the responsible party fails to correct the default within thirty (30) days after being given notice, the other party may without prejudice to any other remedy, terminate the Lease.

Agreement ¶16.

RTC was put into involuntary Chapter 7 bankruptcy in November 1999 and later converted the case to a Chapter 11 reorganization. RTC assumed the American Grading Agreement in July 2002. In September 2005, RTC's bankruptcy case was reconverted to a Chapter 7 liquidation, and a trustee was appointed.

In March 2006, the trustee and IIT entered into a settlement agreement under which IIT would be assigned the McCook landfill lease. The settlement agreement allowed IIT to designate executory contracts that the trustee would be required to assume and then assign to IIT. If the trustee refused to seek the bankruptcy court's approval to assume and assign a contract designated by IIT, IIT had the right to ask the court to compel the trustee to act.

On July 7, 2006, IIT moved the bankruptcy court to compel the trustee to assume the American Grading agreement. American Grading filed initial objections, contending that the lease had expired on January 1, 2006. On November 21, 2006, the bankruptcy court ruled that

the lease had been extended "by default."

On December 22, 2006, American Grading filed a motion for relief from the automatic stay, asking to send the trustee a notice of default, based on, among other things, RTC's failure to pay its $100,000 advance royalty payment on January 1, 2006. The bankruptcy court granted the motion, and on December 29, 2006, American Grading sent the trustee a notice of default. The trustee failed to cure the stated defaults within the allotted thirty day period, and on January 31, 2007, American Grading sent the trustee a notice of termination.

IIT, the intended assignee of the Agreement, disputed American Grading's termination claim. American Grading requested a trial date to resolve the dispute, and on February 8, 2007, the court set the case for trial on April 4, 2007. On April 6, 2007, following the conclusion of the trial, the bankruptcy court ruled that the Agreement had been terminated because of the trustee's failure to pay the $100,000 advance royalty payment and his subsequent failure to cure the default within thirty days of receipt of the notice of default. On April 17, 2007, the court issued a supplemental ruling with additional findings of fact, including a finding that American Grading had not prohibited the trustee from gaining access to the McCook landfill, as IIT had claimed.

## Discussion

The Court reviews the bankruptcy judge's conclusions of law *de novo* but reviews his factual findings for clear error. *In re Sheridan,* 57 F.3d 627, 633 (7th Cir. 1989). "The clearly erroneous standard . . . does not permit a trier of fact to be overturned 'simply because [the appellate court] is convinced it would have decided the case differently.'" *In re Bonnett,* 895 F.2d 1155, 1157 (7th Cir. 1989) (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573

(1985)). Rather, if "two permissible conclusions can be drawn, the factfinder's choice cannot be clearly erroneous." *Id.* The bankruptcy court's interpretation of its own orders may not be reversed absent a clear abuse of discretion. *Endois Corp. v. Employers Ins. of Wausau (In re Consolidated Indus. Corp.),* 360 F.3d 712, 716 (7th Cir. 2004).

IIT identifies four issues that it contends require the reversal of the bankruptcy court's decision. First, IIT argues that RTC's failure to make the $100,000 advance royalty payment to American Grading was not a material breach of the Agreement. Second, it argues the bankruptcy court erred in failing to find that American Grading had prevented RTC from entering the landfill and performing under the Agreement. Third, IIT contends that the bankruptcy court erred in refusing to allow IIT to withdraw exhibits from its exhibit list prior to their tender to the court or admission into evidence. Finally, it argues that the bankruptcy court misinterpreted its February 8, 2007 order setting the matter for trial and erroneously rendered effective American Grading's notice of termination of the lease.

**1.      Nonpayment of advance royalty**

IIT argues that the bankruptcy court erred in determining that the nonpayment of the $100,000 advance royalty justified the termination of the Agreement. IIT makes two principal arguments. First, IIT argues that the non-payment was not a material breach of the Agreement. It contends that the breach was technical, reasoning that because no royalties were ultimately due during the 2006 period, payment of the 2006 advance royalty was "pointless" and "not a type of breach that, if anticipated, would have prevented the Agreement from coming into existence."

4

*See* IIT Brief at 8.[1] Second, IIT argues that based on statements it made in a motion *in limine* filed before trial, American Grading should not have been allowed to premise its argument for termination on nonpayment of the advance royalty. *See id.* at 9.

The bankruptcy court did not err in finding RTC's breach material. The Agreement specifically called for $100,000 to be paid on January 1 of each year. That payment was the principal form of consideration due from RTC under the Agreement, and failure to make the payment properly was grounds for termination. When RTC assumed the lease in July 2002, it expressly reiterated this advance royalty payment requirement. *See* Order Authorizing Debtor's Assumption of its Executory Landfill Gas Collection and Conversion Agreement with American Grading Company (IIT Ex. A).

IIT contends that although nonpayment of the advance royalty might, under some circumstances, amount to a material breach, this was not the case in 2006: RTC ultimately sold no gas that year, American Grading thus earned no royalties, and the nonpayment of the advance royalty was of no significance. This misunderstands the way the advance royalty payment was structured under the Agreement; its payment was not excused unless the royalties that had come due *during the preceding year* were under $100,000. As Judge Wedoff stated:

> There is a new hundred thousand dollars [due] every year unless RTC can show that the royalties that came due during the preceding year did not equal or exceed a hundred thousand dollars.
>
> RTC doesn't have a right not to pay a hundred thousand dollars unless it shows that the royalties for the preceding year were less than $100,000. To that extent,

---

[1] American Grading asserts that IIT forfeited its materiality argument by failing to assert it at trial. The Court rejects American Grading's contention. Though it does not appear that the terms "material breach" and "technical breach" were used at trial, the matters addressed clearly included the significance of the advance royalty payment.

> it can reduce its hundred thousand dollar payment by the amount of the deficiency in royalties of the prior year.
>
> But if RTC doesn't show that, it has the obligation to make the hundred thousand dollar payment.

Apr. 6, 2007 Tr. at 110.

IIT presented no evidence regarding how much, if at all, the royalties payable for 2005 were less than $100,000. Thus there is no basis to conclude that the nonpayment of the advance royalty was immaterial.

Further, once RTC received the notice of default, it had thirty days under the Agreement to cure the default by paying the $100,000 advance royalty. Upon receiving the notice of default, RTC could have taken any number of steps to contest the claim of default, including engaging in communication with American Grading. Instead, RTC did nothing. *See* Apr. 6, 2007 Tr. at 191.

Finally, IIT contends that American Grading's reliance on the non-payment of the advance royalty should be disallowed as a basis for termination because of statements American Grading made in a pretrial motion *in limine* it filed about a week before the trial. *See* IIT Brief at 9. In that motion, American Grading said that its termination argument was based solely upon RTC's non-performance following March 26, 2006, the date that RTC abandoned its operating permit. For this reason, American Grading sought to bar evidence that it had barred RTC's employees from accessing the McCook landfill prior to March 26, 2006. The bankruptcy court denied the motion, ruling that it presented factual and legal arguments not properly decided on a motion *in limine*. *See* Apr. 4, 2007 Tr. at 16.

IIT argues that because American Grading said in the motion *in limine* that March 26,

6

2006 was the date on which the breach began, it should not have been permitted to argue that nonpayment of the advance royalty due on January 1, 2006 constituted grounds for terminating the Agreement. The Court disagrees. As indicated in its notice of default of December 29, 2006, American Grading considered the nonpayment to be a continuing breach of the Agreement, not a breach that began and ended on one day. The bankruptcy court did not err in allowing American Grading to base its termination claim on the nonpayment of the advance royalty.

## 2. Prevention of trustee's performance

IIT contends that American Grading prevented RTC from performing under the lease beginning in December 2005 and that this excused any non-performance by RTC. IIT argues that American Grading's "denial of access for ten months rendered it impossible for RTC to cure the defaults asserted in the Notice of Default." *See* IIT Brief at 10. It contends that the bankruptcy court erred in finding that American Grading had not denied the trustee access to the landfill following the court's November 2006 ruling affirming the extension of the lease.

The Court disagrees. First, physical access to the McCook landfill had no impact on the trustee's failure to pay the $100,000 advance royalty payment, either before or after receipt of the notice of default. Second, the trustee's testimony at trial undermines any claim that American Grading prevented RTC from access to the McCook landfill. Specifically, the trustee stated that he could have gained access to the landfill, even during the ten month period when American Grading believed the Agreement had expired:

> THE COURT: That's my point. That – any statement by Mr. Munitz, whether an email or otherwise, would not have stopped you from getting a court order allowing you to do whatever activity [at the McCook landfill] you wanted?
>
> TRUSTEE: Correct. Correct.

7

Apr. 4, 2007 Tr. at 219.

> THE COURT: I just wanted to get that question answered. You had on other occasions obtained court orders to allow you to take action you thought was appropriate?
>
> TRUSTEE: Oh, yes. Yes.

*Id.* at 220.

Lastly, the court found no evidence that American Grading had any impact on the trustee's access to the property after the Agreement was found to have been renewed in November 2006. *See* Apr. 17, 2007 Suppl. Order. The trustee conceded in June 14, 2006 court proceedings that "under no conditions is the estate doing anything there [at the McCook landfill]. We've ceased all operations." Since December 2005, the trustee had not been on the premises and had no intention of being on the premises. In addition, and contrary to IIT's assertions, the trustee did not authorize any activity on behalf of the estate at the McCook landfill. As the trustee testified at trial:

> Q: Once you abandoned the operating permit for the McCook facility [on March 26, 2006], did you have any intention of operating the collection – collection and conversion system?
>
> A: No. . . . The estate terminated all its employees at about the same point in time.

Apr. 4, 2007 Tr. at 174.

> A: Upon the abandonment, the estate abandoned the permits, terminated its employees, and had no relationship to operation of the [site].

*Id.* at 175.

> THE COURT: I think it is very clear from Mr. Steinberg's testimony that he authorized no activity on behalf of the estate at the McCook site from this March date when he terminated all of the employees –

>     TRUSTEE: Right.
>
>     THE COURT: – through the present time.
>
>     TRUSTEE: Correct, Your Honor.

*Id.* at 176.

The bankruptcy court's ruling that American Grading did not prevent RTC from performing under the lease thus was not clearly erroneous.

**3.     American Grading's use of IIT's exhibits**

IIT contends that the bankruptcy court erred in refusing to allow IIT to withdraw certain exhibits that it had previously proffered and that American Grading later introduced into evidence at trial. The admission of these exhibits was not an abuse of the bankruptcy court's discretion. In its amended trial exhibit and witness list, American Grading expressly reserved its right to "use any and all exhibits identified on the exhibit lists filed by [IIT] and the Chapter 7 Trustee." *See* IIT Ex. M. Under the circumstances, American Grading's use of the exhibits at trial did not amount to unfair surprise, nor did it unfairly prejudice IIT.

**4.     Bankruptcy court's interpretation of February 8, 2007 order**

Finally, IIT argues that the bankruptcy court misinterpreted its February 8, 2007 order regarding the subject of the April 2007 trial. In that order, the court set a trial date of April 4, 2007 to resolve the termination issue and stated that "[t]he parties shall continue the status quo as of December 28, 2006 without prejudice to [American Grading's] right to raise issues set forth in its notice sent 12/29/06." *See* Feb. 8, 2007 Order.

IIT contends that this provision barred American Grading from contending that the Agreement could be terminated by any action taken after December 28, 2006. Because

American Grading had not taken steps to terminate the Agreement by that date, IIT contends, termination should not have been an issue at trial. IIT argues the February 8 order essentially limited the issues for trial to determination of whether any defaults existed so that IIT could be permitted to cure any such defaults. *See* IIT Brief at 15-16.

Judge Wedoff rejected IIT's argument. As he stated,

> the discussion on record, as reflected in the transcript of February 8, indicates the court's agreement with the position taken in the motion; that there was – and I am reading from page three of the transcript, a question of whether quote, "There are grounds for terminating the contract separate from the contract extension question, separate from its termination by its terms, a question that's still outstanding and that can be addressed." . . . Nothing in the rest of the transcript indicates any determination by the court to eliminate the question of termination by virtue of an uncured default from the issues that would be set for trial. To the contrary, it is made very clear that the issue would be addressed at trial. To say that the counterparty to an assumed contract could not take action to enforce its rights under the contract would be very peculiar . . . .

Apr. 4, 2007 Tr. at 63, 77-80.

A court's interpretation of its own order is not subject to reversal absent a clear abuse of discretion, *Endois Corp.*, 360 F.3d at 716; a court that has issued an order is in the best position to interpret it. The Court concludes that Judge Wedoff's interpretation of his order was not an abuse of discretion. Reading the February 8 order as IIT suggests makes no sense; the bankruptcy court would not have scheduled a trial concerning the validity of the termination if it intended to address only the issue of cure. Had the court found the termination improper, presumably it then would have addressed the question of cure costs. But the first step in any such analysis was the issue of termination.

## Conclusion

For the reasons stated above, the Clerk is directed to enter judgment affirming the

decision of the bankruptcy court.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
MATTHEW F. KENNELLY
United States District Judge

Date:   November 19, 2007